**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FRIENDS OF THE PARKS, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 14-CV-9096** |
| **v.** | ) | |
| | ) | **The Honorable John W. Darrah** |
| **CHICAGO PARK DISTRICT, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT CHICAGO PARK DISTRICT'S ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT**

Defendant Chicago Park District (the "Park District"), by its attorneys, Burke, Warren,

MacKay & Serritella, P.C., hereby files its Answer and Affirmative Defenses to the Complaint

filed by Plaintiffs Friends of the Parks, Sylvia Mann and John Buenz.

**ANSWER**

**Introduction**

1.      Plaintiffs Friends of the Parks, et al., seek to bar or enjoin the Chicago Park
District and the City of Chicago from authorizing, approving or taking any role in the
construction of any new building or development—including the so-called Lucas Museum of
Narrative Art—on any property or transferring control of any property that is held solely by the
State of Illinois in trust for the public. Under the public trust doctrine recognized in both federal
and state courts, such trust property recovered from the waters of Lake Michigan should be set
aside and preserved as a natural resource and open space equally available to Illinois citizens for
their use and enjoyment and for access to navigation, fishing and commerce on Lake Michigan.
Accordingly, these defendants may not build on such property to be held in trust or convey any
interest in or right of control of such property to a private organization like the Lucas Museum of
Narrative Art, which is likely to be accountable to a single private individual.

ANSWER:  The Park District admits that Plaintiffs seek to bar it and Defendant City of

Chicago (the "City") from "authorizing, approving or taking any role in the construction of any

new building or development—including the so-called Lucas Museum of Narrative Art--on any

property or transferring control of any property that is held solely by the State of Illinois in trust for the public." The Park District denies the remaining allegations contained in Paragraph 1.

2.      First, pursuant to 42 U.S.C. § 1983, plaintiffs challenge the right of the local governmental defendants to build on or dispose of such trust property, in which every citizen of the State has an equal beneficial interest, without the consent and authorization of the General Assembly of the State of Illinois. Any such building or conveyance or transfer of control without authority of the General Assembly will diminish or impair the beneficial interest of plaintiffs and other Illinois citizens in such trust property, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

ANSWER:  The Park District admits that in Count I of their Complaint, Plaintiffs, pursuant to 42 U.S.C. § 1983, bring a due process challenge to the proposal to locate the Lucas Museum of Narrative Art (the "Museum") on land they allege is subject to the public trust doctrine. The Park District denies the remaining allegations contained in Paragraph 2.

3.      Second, pursuant to 42 U.S.C. § 1983, any such new building or conveyance of an interest in such property to the Lucas Museum of Narrative Art creates an arbitrary classification of rights with respect to such trust property, in violation of the Equal Protection Clause of the Fourteenth Amendment. Such classification is especially arbitrary and capricious where it is for the benefit of a private organization likely to be accountable to a single private individual and where it will conflict with the purpose of the trust, namely, to preserve the property as a natural resource and as a free and open space not occupied by a giant building.

ANSWER:  The Park District admits that in Count II of their Complaint, Plaintiffs, pursuant to 42 U.S.C. § 1983, bring an equal protection challenge to the proposal to locate the Museum on land they allege is subject to the public trust doctrine. The Park District denies the remaining allegations contained in Paragraph 3.  Further answering, the Park District states that Count II was dismissed by the Court on March 12, 2015.

4.      Third, by acting to build on trust property or convey an interest in or control of such property to a private individual without the authorization of the General Assembly, the local governmental defendants have engaged or will engage in an ultra vires act for which they have no authority, notwithstanding that the City is a home rule unit.

ANSWER:  The Park District admits that the City is a home rule unit of local government.  The Park District admits that in Count III of their Complaint, Plaintiffs claim that

the City and the Park District are engaging in an ultra vires act by proposing to locate the Museum on land they allege is subject to the public trust doctrine. The Park District denies the remaining allegations contained in Paragraph 4.

5.    Fourth, and in the alternative, the local governmental defendants hold title subject to the public trust doctrine and have no legal authority under state law or otherwise to convey any interest in or right of control of such trust property to a private individual or a private organization, or to take any action that impairs the property as a natural resource or pristine physical environment or impairs or interferes with the use and enjoyment of the trust property by plaintiffs and other Illinois citizens as a natural resource and as a free and open space accessible for navigation, fishing, boating, and commercial activities on Lake Michigan.

ANSWER:  The Park District admits that it holds title to the land proposed for the location of the Museum.  The Park District admits that in Count IV of their Complaint, Plaintiffs claim that the City and the Park District are violating the public trust doctrine by proposing to locate the Museum on the property identified in Paragraph 1 of the Memorandum of Understanding ("MOU").  Plaintiffs' allegation that the Project Area is governed by the public trust doctrine is a legal conclusion to which no answer is required. The Park District denies the remaining allegations contained in Paragraph 5.

### Parties

6.    Plaintiff Friends of the Parks (FOTP) is a nonprofit park advocacy organization, dedicated to preserving, protecting, and improving Chicago's parks and forest preserves for all citizens.

ANSWER:  The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7.    Plaintiff Sylvia Mann is a resident of Illinois.

ANSWER:  The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7.

8.    Plaintiff John Buenz is a resident of Illinois.

ANSWER: The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8.

9. Defendant Chicago Park District is a body politic and corporate established by state law. 70 ILCS 1505/3.

ANSWER: The Park District admits the allegations contained in Paragraph 9.

10. Defendant City of Chicago is a body politic and municipal corporation.

ANSWER: The Park District admits the allegations contained in Paragraph 10.

## Jurisdiction and Venue

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States and pursuant to 28 U.S.C. § 1343 because it seeks to redress the deprivation under color of State law of constitutional rights. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

ANSWER: The Park District denies that this Court has subject matter jurisdiction over Plaintiffs' claims, but, to the extent the Court does have subject matter jurisdiction, the Park District admits the allegations contained in Paragraph 11.

12. Venue is proper in this district because all of the parties reside in this district and all of the facts giving rise to this action took place in this district.

ANSWER: The Park District admits the allegations contained in Paragraph 12.

## Facts

13. On May 16, 2014, the Mayor's Lucas Cultural Arts Museum Site Selection Task Force provided a report to the Mayor recommending the parking lots south of Soldier Field as the site for constructing the proposed Lucas Museum.

ANSWER: The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14. On May 20, 2014, the Mayor publicly endorsed the recommendation of the Task Force.

ANSWER: The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15.     The new museum will be known as the Lucas Museum of Narrative Art.

ANSWER: The Park District admits the allegations contained in Paragraph 15.

16.     The new museum will be operated by a non-profit corporation also called the Lucas Museum of Narrative Art (hereinafter "LMNA").

ANSWER: The Park District admits the allegations contained in Paragraph 16.

17.     On or about September 8, 2014, the Park District entered into a memorandum of understanding ("MOU") with LMNA.

ANSWER:  The Park District admits the allegations contained in Paragraph 17.

18.     The MOU is attached as Exhibit A and incorporated by reference.

ANSWER: The Park District admits the allegations contained in Paragraph 18.

19.     The stated purpose of the MOU "is to outline the preliminary terms that have been discussed between the Chicago Park District and LMNA regarding the beautification and use of the Museum Site...and the construction, use and operation of the Museum." Ex. A at 2,¶G.

ANSWER:  The Park District admits that Plaintiffs have quoted a portion of Recital G of the MOU that sets forth the purpose of the MOU, but denies that Plaintiffs have quoted Recital G in its entirety. Further answering, the Park District states that Recital G, in its entirety, states: "The purpose of this MOU is to outline the preliminary terms that have been discussed between the Park District and LMNA regarding the beautification and use of the Museum Site (as hereinafter defined) and the construction, use and operation of the Museum. The proposed development will not proceed unless and until the parties have negotiated, executed and delivered mutually acceptable agreement following public review and hearing processes and subject to all applicable governmental approvals, including City Council action and Park District board approval."

20.     The MOU states that the Museum will be located on the plot of land recommended by the Mayor's Task Force and endorsed by the Mayor:

The Museum will be located in the Museum Campus in the area generally lying between East Waldren Drive on

5

the north and the McCormick Place Lakeside Center
(East Building) on the south (the "Project Area").

Ex. A at 2, & 1.

ANSWER**:** The Park District admits that the MOU states in Paragraph 1 that "[t]he Museum will be located in the Museum Campus in the area generally lying between East Waldren Drive on the north and the McCormick Place Lakeside Center (East Building) on the south (the "Project Area"), but denies that Plaintiffs have quoted Paragraph 1 in its entirety. The Park District lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20.

21.     On the map below, the "Project Area" is outlined by the dotted black line.

ANSWER: The Park District admits that the Project Area is generally represented on the map by the dotted black line on page 5 of Plaintiffs' Complaint but denies that the map reflects the exact boundaries of the Project Area.

22.     The "Project Area" is located within Burnham Park and consists entirely of land recovered from the navigable waters of Lake Michigan, most of it during the 1920s.

ANSWER:  The Park District admits that the Project Area is located within Burnham Park and consists of land recovered from the navigable waters of Lake Michigan. The Park District lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation that "most" of the land was recovered "during the 1920s" because "most" is too vague to permit the Park District to frame a response.

23.     The land encompassed by the "Project Area" is to be held by the State of Illinois as public trust property.

ANSWER:  The Park District denies the allegations contained in Paragraph 23.

24.     At various times the City or the Chicago Park District has claimed to be the owner of the "Project Area."

ANSWER:  The Park District admits that the Park District currently holds title to the Project Area.  The Park District lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24.

25.     However, under various court decisions, it has been established that, the State of Illinois is the exclusive trustee of the "Project Area."

ANSWER: The Park District denies the allegations contained in Paragraph 25.

26.     The Defendants have not described the specific manner in which the property will be conveyed to allow for the construction of the Museum, and the MOU does not make this clear either.

ANSWER: The Park District denies Plaintiffs' allegation that the Park District will convey the Project Area to allow for the construction of the Museum.  The Park District admits that the MOU does not state that the Project Area will be conveyed by the Park District to allow for construction of the Museum.

27.     The Museum will be dedicated to the exhibition of "narrative art" that will be selected by the LMNA.

ANSWER: The Park District admits that Recital E of the MOU states that the "mission of the Museum is to collect, preserve, exhibit, study, and promote narrative art and the evolution of moving images, from illustration to cinema to the digital mediums of the future.  The Museum's collection spans a century-and-a-half and features the images and the mediums that have profoundly shaped our cultural heritage. The Museum will support the innovations of the digital age while emphasizing the visitor's experience, community involvement, diversity, and commitment to excellence in art, architecture, and creativity. Public outreach and educational programming are central to the mission and public service goals of the Museum." The Park District admits that Museum exhibits will be selected by the LMNA.

28.     The Museum may or may not be owned by the City or the Park District.

ANSWER: The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 because the allegations are too vague for the Park District to frame a response.

29.     The Museum may or may not be owned by LMNA or leased to the LMNA.

ANSWER: The Park District lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 because the allegations are too vague for the Park District to frame a response.

30.     Whatever the terms of the conveyance, the MOU makes clear that the Museum building will be used solely and exclusively by the LMNA for its own purposes and that LMNA will have the exclusive right to occupy, use, maintain, manage, and control the Museum building and site.  Ex. A at && 2 and 10..

ANSWER: The Park District denies Plaintiffs' allegation that the Park District will convey the Project Area to allow for the construction of the Museum or that the MOU contemplates a conveyance of the Project Area. The Park District admits that Paragraph 2 of the MOU states, in relevant part, that the "Park District will permit LMNA to construct, operate and maintain a building (the "Museum Building") on the Museum Site, to be open to the public and used solely and exclusively for the purpose of operating and maintaining a museum consistent with the educational and cultural mission of the LMNA (the "Museum Purpose"), for so long as LMNA is then in material compliance with the terms of the operating agreement described in paragraph 10 below." The Park District admits that Paragraph 10 of the MOU states, in relevant part, that "subject to the rules and regulations of the Park District, LMNA will have the exclusive right to occupy, use, maintain, manage, and control the Museum Building and the Museum Site." The Park District denies that LMNA can use the Museum "solely and exclusively . . . for its own purposes." The Park District denies the remaining allegations contained in Paragraph 30. Further answering, the Park District states that Paragraph 19 of

the MOU states that the MOU "is not intended to create any binding contractual obligations on any party" and that "[n]either party may claim any legal rights against the other by reason of this MOU."

31.     The MOU states that both the Park District and the City will cooperate with LMNA as LMNA seeks permits and approvals for construction of the Museum, including approval of amendments to the City's zoning ordinances. Ex. A at ¶ 12.

ANSWER: The Park District admits that Paragraph 12 of the MOU states that the Park District and the City "will cooperate with LMNA" as LMNA seeks "all permits or approvals required for the Museum . . . including, without limitation, an amendment to Planned Development No. 778 and approval under the Lake Michigan and Chicago Lakefront Protection Ordinance."

32.     The Museum will be a new structure on land dedicated to the public trust.

ANSWER: The Park District admits that the Museum will be a new structure on land that is owned by the Park District. Plaintiffs' allegation that the land is subject to the public trust doctrine is a legal conclusion to which no answer is required.

33.     The purpose of the trust as previously declared by the Supreme Court of Illinois is to ensure that the property recovered from Lake Michigan is preserved as a natural resource and as improved physical environment and to ensure that the public has access to navigation, fishing and commerce on Lake Michigan.

ANSWER:  The Park District admits that in *Illinois Central Railroad Co. v. State of Illinois,* 146 U.S. 387, 452 (1892), the U.S. Supreme Court stated that the state holds title to "lands under the navigable waters of Lake Michigan" "in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties." The Park District denies the remaining allegations contained in Paragraph 33.

34.     The proposed plan for the Museum—and in particular the construction of a new building on such trust property—will require conveyance of trust property in some manner to the

LMNA or a related private organization or individual with an ownership interest in the LMNA.

ANSWER: The Park District denies the allegations contained in Paragraph 34.

35.    The local governmental defendants have begun the planning for the new construction.

ANSWER:  The Park District admits that the Park District executed the MOU on or about September 8, 2014 and that the MOU sets forth the preliminary terms that have been discussed between the Park District and LMNA "regarding the beautification and use of the Museum Site. . . and the construction, use and operation of the Museum." The Park District lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 35 because Plaintiffs' allegation that Defendants "have begun the planning for the new construction" is too vague to permit a response.

36.    An artist's rendering of the proposed LMNA is attached as Exhibit B.

ANSWER:  The Park District admits that Plaintiffs have attached to their Complaint as Exhibit B a preliminary architectural rendering of the proposed Museum.

37.    The LMNA structure being proposed will fail to preserve the trust property as a natural resource and as a clear and open space ensuring unrestricted access to Lake Michigan.

ANSWER: The Park District denies the allegations contained in Paragraph 37.

**Irreparable Injury and Inadequate Remedy at Law**

38.    By the actions set forth above, Defendants will interfere with and impair right [stet] of Plaintiffs and other Illinois citizens to use and enjoy property held in trust by the State of Illinois as a natural resource and pristine physical environment and as a free and open space for access to and use and enjoyment of navigation, fishing, boating, and commerce on Lake Michigan.

ANSWER: The Park District denies the allegations contained in Paragraph 38.

39.    By the same actions set forth above—including the failure of Defendants to preserve the trust property for their use and enjoyment as a natural resource and physical environment and by authorizing the construction of an edifice and transfer of control that will interfere with their unrestricted access to and right to engage in navigation, fishing, boating,

commerce and other activities on Lake Michigan, and by otherwise changing the character of the property as a trust held equally in commons in their behalf and not for the benefit of any private organization—Plaintiffs and other Illinois citizens will suffer an irreparable injury to their beneficial interest in the property held in trust for them by the State of Illinois.

ANSWER:  The Park District denies the allegations contained in Paragraph 39.

40.     There is no adequate remedy at law for the impairment of the beneficial interest in such property held equally by Plaintiffs and other Illinois citizens from the actions set forth above.

ANSWER:  The Park District denies the allegations contained in Paragraph 40.

41.     As beneficiaries of a trust Plaintiffs have standing to enjoin a breach of trust before it occurs.

ANSWER: The Park District denies the allegations contained in Paragraph 41.

**Count I**
**Violation of Due Process**

42.     By acting to build or approve the building of the LMNA without the prior authorization of the General Assembly, and purporting to convey any interest in or control of such property to or on behalf of the LMNA or any other private organization or individual, Defendants the City and Chicago Park District will take or deprive or otherwise diminish the beneficial interest of the Plaintiffs and other citizens in the use of the trust property, in violation of the rights of Plaintiffs and other Illinois citizens under the Due Process Clause of the Fourteenth Amendment.

ANSWER:  The Park District denies the allegations contained in Paragraph 42.

43.     Accordingly, pursuant to 42 U.S.C. § 1983, Plaintiffs seek to bar Defendants from building or approving the building of the LMNA and from conveying any interest in or control of the trust property to the LMNA where the defendants have not obtained the prior authorization of the General Assembly and have otherwise acted in violation of the rights plaintiffs and other Illinois citizens of their rights as holders of a beneficial interest protected under the Due Process Clause of the Fourteenth Amendment.

ANSWER: The Park District admits that Plaintiffs seek the relief stated in Paragraph 43 but denies that Plaintiffs are entitled to such relief. The Park District denies the remaining allegations contained in Paragraph 43.

44.     In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs seek to bar the Defendants from any action that takes or diminishes the value of the beneficial interest of plaintiffs and other Illinois citizens in such trust property by any new building or construction or transfer of control

that fails to preserve the trust property either as a natural resource for their equal use and enjoyment or as a free and open space accessible for use and enjoyment of activities on Lake Michigan, and any other action that likewise violates their rights as holders of such a beneficial interest protected under the Due Process Clause of the Fourteenth Amendment.

ANSWER: The Park District admits that Plaintiffs seek the relief stated in Paragraph 44 but denies that Plaintiffs are entitled to such relief. The Park District denies the remaining allegations contained in Paragraph 44.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Enjoin the conveyance by Defendants of any right or interest in or transfer of control of the public trust lands as shown in the map above to the LMNA or any related organization or individual.

B.      Enjoin Defendants from approving or allowing the construction of the LMNA on the public lands shown in the map above.'

C.      Award Plaintiffs their fees and costs; and

D.      Award any other just and equitable relief that the Court deems appropriate.

ANSWER: The Park District admits that Plaintiffs seek the relief stated in their prayer but deny that Plaintiffs are entitled to such relief. The Park District therefore respectfully requests that the Court enter judgment in its favor and against Plaintiffs on Count I of their Complaint and grant the Park District such further relief as the Court deems just and appropriate.

### Count II
### Violation of Equal Protection

45.      By the acts set forth above, Defendants have created or will create a new right or rights in the use of such trust property for the benefit of the LMNA and any other private organization or individual to which LMNA is accountable and not for the equal and undivided beneficial interest of the plaintiffs and other Illinois citizens.

ANSWER: Because the Court dismissed Count II of Plaintiffs' Complaint on March 12, 2015, no answer to the allegations contained in Paragraph 45 is required.

46.      Such arbitrary and ad hoc classification of a special right in or control of trust property serves no legitimate trust purpose.

12

ANSWER: Because the Court dismissed Count II of Plaintiffs' Complaint on March 12, 2015, no answer to the allegations contained in Paragraph 46 is required.

47.     Pursuant to 42 U.S.C. § 1983, Defendants have unlawfully created or will create an arbitrary and ad hoc classification that has no rational relationship to a legitimate trust purpose and both destroys the legal character of the trust property as property held in commons and impairs the enjoyment and use of such trust property on an equal basis by Plaintiffs and other citizens, in violation of the Equal Protection Clause of the Fourteenth Amendment.

ANSWER: Because the Court dismissed Count II of Plaintiffs' Complaint on March 12, 2015, no answer to the allegations contained in Paragraph 47 is required.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enjoin the conveyance by Defendants of any special property right or special interest in or control of the public trust lands as shown in the map above to the LMNA or any related private organization or individual;

B.     Enjoin Defendants from approving or allowing the construction of the LMNA on the public trust lands shown in the map;

C.     Award Plaintiffs their fees and costs; and

D.     Award any other just and equitable relief that the Court deems appropriate.

ANSWER: Because the Court dismissed Count II of Plaintiffs' Complaint on March 12, 2015, Plaintiffs cannot obtain the relief sought in their prayer.

**Count III**
**Ultra Vires Action**

48.     As set forth above Defendants have acted without any authority or approval of the General Assembly of the State of Illinois.

ANSWER: The Park District denies the allegations contained in Paragraph 48.

49.     Where property has been recovered from the waters of Lake Michigan and is subject to the public trust doctrine, Defendants have no authority to dispose of any trust property without authorization by the General Assembly of the State of Illinois.

13

ANSWER: Plaintiffs' allegation in Paragraph 49 constitutes a legal conclusion to which no answer is required.

50.     Any title held by Defendants in trust property is held subject to the authority of the State of Illinois to hold the property in trust for all the citizens of the State of Illinois.

ANSWER:  The Park District admits that the Park District holds title to the Project Area. Plaintiffs' allegation that the Project Area is subject to the public trust doctrine is a legal conclusion to which no answer is required. The Park District denies the remaining allegations contained in Paragraph 50.

51.     Therefore, any conveyance or purported conveyance of any interest in or transfer of control of such property to the LMNA or to any private organization or individual is an ultra vires act by the Defendants.

ANSWER:  The Park District denies the allegations contained in Paragraph 51.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enjoin the conveyance by Defendants of any property rights or interest in or transfer of control of the public trust lands shown in the map above to the LMNA or any related private organization or individual;

B.     Enjoin the Defendants from approving or allowing the construction of the LMNA on any of the trust lands shown in the map above;

C.     Award Plaintiffs their fees and costs; and

D.     Award any other just and equitable relief that the Court deems appropriate. Pi)

ANSWER: The Park District admits that Plaintiffs seek the relief stated in their prayer but denies that Plaintiffs are entitled to such relief. The Park District therefore respectfully requests that the Court enter judgment in its favor and against Plaintiffs on Count III of their Complaint and grant the Park District such further relief as the Court deems just and appropriate

**Count IV**
**Violation of Public Trust Doctrine**

52.     By the acts set forth above, and even if it were to be assumed that the Defendants have the authority to act in this matter (and they do not), Defendants have also engaged in a

14

breach of trust to Plaintiffs and other members of the public with respect to the property which is to be held in trust for them.

ANSWER: The Park District denies the allegations contained in Paragraph 52.

53.     By the acts set forth above, and by the proposed construction of the Museum and by any transfer of control of the trust property to the LMNA, Defendants will interfere with the right of Plaintiffs and other Illinois citizens to use and enjoy the trust property as a natural resource and pristine physical environment, and impair the value of the trust property for such purpose.

ANSWER:  The Park District denies the allegations contained in Paragraph 53.

54.     Furthermore, by the acts set forth above, and the proposed construction of the LMNA, and based on current drawings for a giant new structure on Lake Michigan as set out in Exhibit B, Defendants will interfere with the right of Plaintiffs and other Illinois citizens to use and enjoy such property as a free and open space with access to navigation, boating, fishing, commerce and other activities on Lake Michigan, and impair the value of the trust property for such purpose.

ANSWER: The Park District denies the allegations contained in Paragraph 54.

55.     As beneficiaries of the trust, Plaintiffs have standing to enforce the trust and prevent the dissipation and waste of trust assets or actions that impair the value of the trust property to them or interfere with their use and enjoyment of the trust property as property held in commons in their behalf.

ANSWER: The Park District denies that Plaintiffs have standing to bring the claims

contained in their Complaint and denies the remaining allegations contained in Paragraph 55.

56.     Furthermore, Plaintiffs are entitled to an injunction against breaches of the trust before such breaches occur.

ANSWER:  The Park District denies the allegations contained in Paragraph 56.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enjoin the conveyance by Defendants of any property rights or interest in or transfer of control of the public trust lands shown in the map above to the LMNA or any related private organization or individual;

B.     Enjoin Defendants from approving or allowing the building of the LMNA on the public trust lands shown in the map;

C.     Award Plaintiffs their fees and costs; and

15

D.     Award any other just and equitable relief that the Court deems appropriate.

ANSWER:  The Park District admits that Plaintiffs seek the relief stated in their prayer but denies that Plaintiffs are entitled to such relief. The Park District therefore respectfully requests that the Court enter judgment in its favor and against Plaintiffs on Count IV of their Complaint and grant the Park District such further relief as the Court deems just and appropriate

## AFFIRMATIVE DEFENSES

### First Affirmative Defense—Claims Not Ripe for Adjudication

1.     On September 8, 2014, the Chicago Park District ("Park District") and the Lucas Museum of Narrative Art ("LMNA") signed a Memorandum of Understanding ("MOU") governing the proposal to locate a new museum ("Museum") in the Museum Campus.

2.     The proposed location of the Museum is the area generally lying between East Waldren Drive on the north and McCormick Place Lakeside Center (East Building) on the south, which is currently used for structured and surface parking (the "Project Area"). Compl. Ex. A, 111. The Park District and LMNA will mutually agree upon a specific site within the Project Area at a later time. *Id.*

3.     As explained in Recital G of the MOU:

> The purpose of this MOU is to outline the preliminary terms that have been discussed between the Park District and LMNA regarding the beautification and use of the Museum Site (as hereinafter defined) and the construction, use and operation of the Museum. The proposed development will not proceed unless and until the parties have negotiated, executed and delivered mutually acceptable agreements following public review and hearing processes and subject to all applicable governmental approvals, including City Council action and Park District board approval.

Compl. Ex. A, Recital G.

16

4.      Because the Project Area is located within the area governed by the Lakefront Protection Ordinance, the Park District must apply to and receive approval from the Chicago Plan Commission before the Museum can locate in the Project Area. If such an application is filed, the Plan Commission must hold a properly-noticed public hearing on any such application before deciding whether to approve it.

5.      The Project Area is also located in Planned Development Zoning Ordinance No. 778 ("PD 778"), which currently does not allow for the construction of a museum in the Project Area. Pursuant to the Chicago Zoning Ordinance, the Park District therefore must apply to the City for an amendment to PD 778. If such an application is filed, the matter would be heard by both the Plan Commission and the City Council's Committee on Zoning, Landmarks & Building Standards before the City Council ultimately votes on whether to approve the zoning amendment. Such hearings would be public and must be properly-noticed.

6.      Neither the Park District nor the LMNA has applied for the Plan Commission's approval under the Lakefront Protection Ordinance. Likewise, no application to amend PD 778 has been filed by the Park District or the LMNA.

7.      The MOU also requires that the Park District and LMNA negotiate and execute development and operating agreements, which require the Park District's Board's approval. Comp'. Ex. A, ¶¶ 9, 10, 19 & Recital G.  Those agreements have not been submitted to the Park District's Board for approval.

8.      Plaintiffs' claims are therefore entirely contingent on the occurrence of future administrative and legislative action, which may not happen.

9.      As a result, Plaintiffs' claims are not ripe for adjudication.

**Second Affirmative Defense — No Standing**

1.      The Park District incorporates Paragraphs 1-6 of its First Affirmative Defense as if set forth fully herein.

2.      Because the Museum requires the approval of the Plan commission under the Lakefront Protection Ordinance, the amendment of PD 778 by the City Council, and the approval of development and operating agreements by the Park District's Board, and neither the Park District nor the LMNA has submitted applications for such approvals, Plaintiffs have neither been injured nor can they claim that any injury is imminent.

3.      Plaintiffs likewise cannot show that there is a probability of harm in the future, because required applications have not been submitted or approved and they cannot presume that applications would be submitted, that any such application would be approved, or what would be approved.

4.      Plaintiffs therefore do not have standing to bring their claims.

**Third Affirmative Defense - Violation of Separation of Powers**

1.      The Park District incorporates Paragraphs 1-6 of its First Affirmative Defense as if set forth fully herein.

2.      The Museum cannot locate in the Project Area unless and until it receives, *inter alia,* zoning approval by the City Council. Plaintiffs, however, ask this Court to "enjoin" the City "from authorizing, approving, or taking any role in the construction of any new building or development" in the Project Area. Compl. ¶ 1.  Plaintiffs therefore seek to supersede and negate the legislative authority of the City Council before it can even consider a zoning application to amend PD 778.

3.      Under the separation of powers doctrine, the Court cannot enjoin the City Council from taking legislative action; its powers are limited to determining whether such legislative action, once taken, is lawful.

4.      Thus, the Court cannot grant Plaintiffs the relief they seek without running afoul of the separation of powers doctrine.

Dated:  April 17, 2015                                  Respectfully submitted,

                                                        CHICAGO PARK DISTRICT


                                                        By:____/s/ Joseph P. Roddy_____
                                                                One of Its Attorneys



Richard W. Burke
Joseph P. Roddy
Susan M. Horner
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois  60611
(312) 840-7000 (Telephone)
(312) 840-7900 (Facsimile)