IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FRIENDS OF THE PARKS, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **No. 14-CV-9096** |
| | ) | **Judge John W. Darrah** |
| CHICAGO PARK DISTRICT, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

In their original complaint, Plaintiffs alleged that the execution of the preliminary "Memorandum of Understanding" ("MOU") between the Chicago Park District ("Park District") and the non-profit corporation ("LMNA") that will operate the proposed Lucas Museum of Narrative Art ("Museum") violated their due process rights and was *ultra vires* because the General Assembly had not approved the project. After this Court ruled on Defendants' motion to dismiss that complaint, the General Assembly amended the Park District Aquarium and Museum Act, 70 ILCS 1290/1 ("Museum Act"), to expressly grant the Park District the authority to lease formerly submerged park land, like that at issue here, for the construction of museums. Based on this additional authority, the Park District then executed a Ground Lease with LMNA, which superseded the MOU. As this Court recognized, these events have rendered Plaintiffs' original claims moot. *See* Tr. of Sept. 10, 2015 Status at 12:9-13 ("[T]hey now have superseded the Memorandum of Understanding with a very detailed proposed lease, and the Illinois legislature has now passed the statute. It seems to me that obviates the thrust of your original complaint.").

Rather than acknowledge that their *ultra vires* and due process claims are moot, Plaintiffs change tack and now assert that the Museum Act, as amended, is invalid because it did not

specifically reference the Museum. Plaintiffs' claim fails, however, because the amended Museum Act clearly permits the lease of formerly submerged lands for museums, and, in any event, legislation specifically authorizing the Museum would have run afoul of the Illinois Constitution's special legislation clause. Plaintiffs also claim that the Ground Lease violates the Fifth Amendment's Takings Clause, but that claim fails because the Takings Clause is implicated only when private property is taken, and, here, the land in question is public property.

In addition, Plaintiffs continue to allege that Defendants' decision to allow construction of the Museum on the lakefront violates the public trust doctrine. But that claim fails as a matter of law because the Museum offers myriad public benefits, including the replacement of an asphalt parking lot with a public museum and the creation of nearly 5 acres (200,000 square feet) of green space that will be open to the public. Moreover, the Park District retains ownership of the land, the Museum will be open to the public and otherwise comply with the Museum Act, and if LMNA fails at any point to operate the Museum as a public museum, the building will revert to the Park District and the Ground Lease will terminate.

For these reasons, explained below, the decision to allow construction of the Museum on an existing parking lot is entirely lawful. There is no legal basis for Plaintiffs to challenge the Ground Lease, and, thus, Plaintiffs' Amended Complaint should be dismissed with prejudice.

**BACKGROUND**

On May 16, 2014, the Mayor's Lucas Cultural Arts Museum Site Selection Task Force recommended the parking lots south of Soldier Field, which are owned by the Park District, as the site for the Museum. Compl. ¶¶ 13, 15. On May 20, 2014, the Mayor publicly endorsed the Task Force's recommendation. *Id.* ¶ 14. The Park District thereafter entered into a non-binding MOU with LMNA that established a framework for further negotiations over use of the site for the Museum. *Id.* ¶¶ 16-17. On November 14, 2014, Plaintiffs initiated this action.

On April 23, 2015, the General Assembly amended the Museum Act, and the Governor signed the bill into law on May 1, 2015. The amended Museum Act provides that "[t]he corporate authorities of cities and park districts having control or supervision over any public park or parks, *including parks located on formerly submerged land*, are hereby authorized to . . . permit the directors or trustees of any corporation or society organized for the construction or maintenance and operation of an aquarium or museum as hereinabove described to erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain, and operate its aquarium or museum within any public park now or hereafter under the control or supervision of any city or park district . . . ." 70 ILCS 1290/1 (emphasis added). It further states:

> [A] city or park district may enter into a lease for an initial term not to exceed 99 years, subject to renewal, allowing a corporation or society as hereinabove described to erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain, and operate its aquarium or museum, together with grounds immediately adjacent to such aquarium or museum, and to use, possess and occupy grounds surrounding such aquarium or museum as hereinabove described for the purpose of beautifying and maintaining such grounds in a manner consistent with the aquarium or museum's purpose, and on the conditions that (1) the public is allowed access to such grounds in a manner consistent with its access to other public parks, and (2) the city or park district retains a reversionary interest in any improvements made by the corporation or society on the grounds, including the aquarium or museum itself, that matures upon the expiration or lawful termination of the lease.

*Id.* The Act also requires museums constructed on park property to offer opportunities for free admission to children and Illinois residents. *Id.*

Pursuant to this express grant of authority from the State, the Park District and LMNA entered into the Ground Lease. The Ground Lease permits LMNA to construct the Museum on, and to beautify and improve, the land lying south of Soldier Field and north of the McCormick Place Lakeside Center (the "Project Area"), which is currently an asphalt parking lot. Compl. Ex. A, Recital D. Following two public hearings, the Park District's Board voted on October 14,

3

2015 to approve the Ground Lease.  Under the Ground Lease, the Park District will lease a portion of the Project Area, shown on Exhibit B-1 to the Ground Lease as Area 3 (the "Museum Site"), to LMNA for a term of 99 years.  *Id.* ¶ 3.1.  The remainder of the Project Area, which will not be leased to LMNA, will be converted at LMNA's expense into 200,000 square feet of new, landscaped green space for use by the public, with LMNA responsible for all future maintenance.[1]  *Id.* ¶ 2.13.

Under the Ground Lease, the Park District will continue to own the Museum Site.  *Id.* ¶ 3.5 ("the Park District shall be forever the holder of fee simple title to the Museum Site"). LMNA must use the Museum Site only for operating a public museum and attendant parking and gift shop functions.  *Id.* ¶¶ 2.3, 2.8.  The Ground Lease further requires LMNA to comply with all provisions of the Museum Act, including its free admission requirements.  *Id.* ¶ 2.3.  Any failure by LMNA to operate the Museum as a public museum will trigger reversion of the building and Museum Site to the Park District and a termination of the Ground Lease.  *Id.* ¶ 3.3.

On October 15, 2015, the Chicago Plan Commission, following a properly-noticed public hearing, voted to approve the Museum, as required under the Chicago Lakefront Protection Ordinance, *see* Municipal Code of Chicago, § 16-4-010, *et seq.*, and to recommend to the City Council that it amend the zoning for the Project Area to permit the Museum.  Subsequently, on October 20, 2015, the City Council's Committee on Zoning, Landmarks and Building Standards held a public hearing on the requested zoning amendment and voted to recommend its passage to the City Council.  On October 28, 2015, the City Council approved the amendment.[2]

---

[1] Subarea 4C is and will remain owned and maintained by the Metropolitan Pier and Exposition Authority.  LMNA will repair Subarea 4C after construction of the Museum.

[2] This Court can take judicial notice of these public meetings and approvals.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 883 (N.D. Ill. 2015) (taking judicial notice of village board meeting minutes on motion to dismiss).

Meanwhile, Plaintiffs filed their First Amended Complaint ("Complaint" or "Compl.") on October 2, 2015.  In Count I, Plaintiffs allege that the Museum Act, as amended, does not legally authorize the Park District to approve the construction of the Museum.  Plaintiffs assert that the General Assembly had to pass a statute that expressly referenced the Museum, rather than a general authorization.  This failure, they claim, violated their due process rights.  Compl. ¶¶ 52-61.  Plaintiffs also claim in Count I that the lease of the Museum Site to LMNA is an unlawful taking in violation of the Fifth Amendment.  *Id.* ¶¶ 66-67.  In Count II, Plaintiffs claim that, in entering into the Ground Lease, allegedly without the approval of the General Assembly, the Park District has committed an *ultra vires* act.  *Id*. ¶¶ 70-71.  Finally, Count III asserts that construction of the Museum violates Illinois's public trust doctrine.  *Id.* ¶¶ 52-56.  None of Plaintiffs' claims has merit, and the Court should dismiss the entire action with prejudice.

## ARGUMENT

### I.     Plaintiffs Fail To State A Due Process Claim (Count I).

Plaintiffs' contention that Defendants have deprived them of property in violation of the Due Process Clause of the Fourteenth Amendment by executing the Ground Lease without specific approval from the General Assembly is baseless.  Plaintiffs' original complaint alleged that Defendants violated the Due Process Clause by executing the MOU without legislative authority.  In response, as this Court has noted, the General Assembly amended the Museum Act to allow the Museum to proceed.  *See* 70 ILCS 1290/1; *see also* Tr. of Sept. 10, 2015 Status at 4:15-17 ("Now I understand the Illinois legislature has enacted a statute arguably authorizing the particular transfer.").  In their amended complaint, Plaintiffs do not acknowledge that the General Assembly has now provided the legislative authority that Plaintiffs previously alleged was lacking.  Instead, Plaintiffs press an entirely new claim.  They assert that the General Assembly was required to pass a statute that *specifically* referenced the Museum, rather than a

statute that generally grants authority to lease Park District property to a museum. Plaintiffs'
revised due process claim fails as a matter of law for several reasons.

### A. Plaintiffs Have No Private Property Interest in the Museum Site.

At the outset, Plaintiffs have no private interest in the Museum Site that rises to the level
of a "secure and durable property right" or "legitimate claim of entitlement," as is required to
state a due process claim under well-established law. *Kvapil v. Chippewa Cnty.*, 752 F.3d 708,
713 (7th Cir. 2014). *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (the first factor to
consider in evaluating a due process claim is "the *private interest* that will be affected by the
official action") (emphasis added).[3] An alleged misuse of public property gives rise, at most, to
a state-law public trust claim, not a due process claim. *See, e.g.*, *Reichelderfer v. Quinn*, 287
U.S. 315, 318-19 (1932) (rejecting neighboring landowners' claim that they had a private
property interest in a public park); *Paepcke*, 263 N.E.2d at 16-18 (distinguishing between a
"public property right to enforce the public trust" and a "private property right" that is "protected
by the constitution"); Joseph Sax, "The Public Trust Doctrine in Natural Resource Law:
Effective Judicial Intervention," 68 MICH. L. REV. 471 (1970) (explaining that public trust issues
should not be treated as constitutional issues because governments must be allowed to
"accommodate[e] new public needs by reallocating resources"). Because Plaintiffs have no
*private* interest in the Museum Site, distinct from the interests of the general public, their due

---

[3] In moving to dismiss Plaintiffs' original complaint, Defendants raised Plaintiffs' lack of a
constitutionally-protected property interest as a ground for dismissing the due process claim. This Court
held that "[c]onstruing the allegations in Plaintiffs' favor . . . Plaintiffs have alleged a state-created
property interest in the lakefront property. . . ." Mem. Op. & Order dated Mar. 12, 2015, at 17. The
Court noted that Plaintiffs' assertion of a property interest was based on the Illinois Supreme Court's
decision in *Paepcke v. Public Bldg. Comm'n of Chicago*, 263 N.E.2d 11 (Ill. 1970), "that each taxpayer of
Illinois has a fractional beneficial interest in the property which the state of Illinois holds in trust for them,
so as to create a protectable property interest." *Id.* But, as explained in Part I.A, *Paepcke* does not hold
that the public's interest in public trust property gives rise to a property interest protected by the Due
Process Clause. If that were true, every citizen in Illinois would be entitled to notice and an opportunity
to he heard on *any* proposal to use lakefront land, including even temporarily-permitted events.

process claim necessarily fails.

### B.    The General Assembly's Legislative Action Satisfies Due Process.

Even if Plaintiffs could assert a constitutionally-protected property interest in the Museum Site, they have not been deprived of due process. In their original complaint, Plaintiffs alleged that the Project Area could not be used for the development of the Museum without the General Assembly's approval. In its ruling on Defendants' motion to dismiss that complaint, this Court held that Plaintiffs had stated a due process claim by alleging "that Defendants ha[d] not provided sufficient process for th[e] deprivation [of Plaintiffs' fractional beneficial interest in public trust property] by failing to obtain an approval from the General Assembly." Mem. Op. and Order dated Mar. 12, 2015, at 17-18. After this Court issued its decision, the General Assembly amended the Museum Act to provide such approval, explicitly authorizing park districts to use "formerly submerged land" for museums and to lease such land to museum corporations and societies for renewable 99-year terms. 70 ILCS 1290/0.01. At the same time, the General Assembly "reaffirmed" that museums "serve valuable public purposes, including, but not limited to, furthering human knowledge and understanding, educating and inspiring the public, and expanding recreational and cultural resources and opportunities." *Id.*

The Ground Lease is entirely consistent with this grant of authority in the Museum Act, and, in fact, Plaintiffs do not allege otherwise. In particular, the Ground Lease provides a renewable 99-year term, Compl. Ex. A, ¶ 3.1; the public is allowed access to the Project Area in a manner consistent with its access to other public parks, *id.* ¶ 2.3; the Museum will be open without charge to school children accompanied by a teacher on all days and to Illinois residents on 52 days each year, *id.*; and the Park District retains a reversionary interest in the improvements to the Project Area, *id.* ¶ 3.3.

Moreover, the amendment to the Museum Act provided Plaintiffs with any process they

7

were due.  As the Seventh Circuit has explained, when the legislature passes a law which affects a general class of persons, "'the legislative determination provides all the process that is due.'" *Dibble v. Quinn*, 793 F.3d 803, 809 (7th Cir. 2015) (quoting *Atkins v. Parker*, 472 U.S. 115, 129-30 (1985)).  This bedrock principle was articulated by Justice Holmes a century ago, and it endures today.  *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("[Plaintiffs'] rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").  Because, in amending the Museum Act, elected representatives of the State discharged their legislative responsibilities in the manner prescribed by law, Plaintiffs cannot claim a violation of their due process rights.

### C.     The General Assembly Was Not Required to Specifically Approve the Ground Lease.

Perhaps because Plaintiffs have no argument that the Park District failed to comply with the Museum Act, they instead assert that the amendment to the Museum Act is not "lawful," Compl. ¶ 56, because the General Assembly did not "refer specifically to the alienation, forfeiture or disposition of the land that is the subject of the ground lease," *id.* ¶ 53.  But this argument is inconsistent with *Paepcke*.  The plaintiffs in *Paepcke* argued that, given "the rights of the public in public trust lands," the reallocation of park use required "explicit and open action by the legislature authorizing such a diversion."  263 N.E.2d at 18.  The Illinois Supreme Court rejected that argument, holding that the General Assembly could authorize the diversion of park land for school construction under a general statute (the Public Building Commission Act), without specifically referencing the park at issue. *Id.* at 19.  Thus, *Paepcke* refutes Plaintiffs' claim that the General Assembly needed to specifically authorize the Museum.

Moreover, the special legislation clause of the Illinois Constitution would prohibit the General Assembly from enacting the statute that Plaintiffs claim due process required.  That

clause, which provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable," Ill. Const. 1970, art. IV, § 13, "prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated," *Big Sky Excavating, Inc. v. Illinois Bell Tel. Co.*, 840 N.E.2d 1174, 1183 (Ill. 2005). Thus, although the General Assembly amended the Museum Act with the Museum in mind,[4] had it passed a statute applicable only to the Museum and not similarly situated entities, it would have risked running afoul of the special legislation clause.

### D.      Plaintiffs Received Myriad Opportunities To Be Heard.

Plaintiffs limit their due process challenge to the legislation amending the Museum Act, and that challenge fails for the reasons described. Plaintiffs do not challenge the many other forums at which they had an opportunity to voice their objections to the Museum, nor could they because those proceedings fully complied with due process requirements. Indeed, each of those proceedings confirms that Plaintiffs received all of the process they were due. On October 14, 2015, the Park District's Board, following two public meetings, approved the Ground Lease at a regularly-scheduled meeting that was also open to the public. Subsequently, on October 15, 2015, the Chicago Plan Commission held a public hearing and voted to approve the project, as required under the Lakefront Protection Ordinance. In addition, the Commission recommended that the City Council approve a zoning amendment for the Museum. Finally, on October 20, 2015, the City Council's Committee on Zoning, Landmarks and Building Standards voted to approve the zoning amendment following a public hearing and to recommend its passage to the City Council, after which the City Council voted its approval at its meeting on October 28, 2015.

---

[4] During floor debate in both the House and the Senate, the Museum and this lawsuit were specifically mentioned as an impetus for the amendment. A transcript of these sessions was not yet publicly available on the date this motion was filed.

9

Each of these proceedings—before the General Assembly, the Park District Board, the Plan Commission, the City Council Committee on Zoning, and the City Council itself—provided Plaintiffs with a more than adequate opportunity to be heard.

## II.      Plaintiffs Fail To State A Takings Claim (Count I).

In addition to their due process claim, Plaintiffs claim in Count I that the Ground Lease "constitutes an unlawful taking of the trust property by [Defendants] from the plaintiffs and people of Illinois in violation of the Takings Clause of the Fifth Amendment." Compl. ¶ 67. The plain language of the Takings Clause forecloses this claim. It states: "nor shall *private property* be taken for public use, without just compensation." U.S. Const., Amdt. 5 (emphasis added). Thus, no taking occurs when public, not private, property is at issue. *See, e.g.*, *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010) ("the Takings Clause bars the State from taking *private property* without paying for it") (emphasis added). *See also Reichelderfer*, 287 U.S. at 323 (holding that the diversion of public park land for the construction of a firehouse did not give rise to a takings claim). Here, because the Project Area is public land, Plaintiffs' takings claim necessarily fails.

## III.      The Execution Of The Ground Lease Was Not An *Ultra Vires* Act (Count II).

If this Court exercises supplemental jurisdiction over Plaintiffs' state law claims, the Court should hold that Plaintiffs fail to state a claim that the execution of the Ground Lease is an *ultra vires* act. The Park District, not the State, holds title to the Project Area. In 1903, the General Assembly empowered boards of park commissioners to construct new park land over the submerged waters of Lake Michigan and vested title to such land in those boards. *See* Park Commissioners Water Control Act, 70 ILCS § 1230/4. In 1934, the General Assembly transferred that title to the newly created Chicago Park District. *See* Chicago Park District Act, 70 ILCS § 1505/12. *See also Friends of the Parks v. Chicago Park Dist.*, 786 N.E.2d 161, 164

10

(2003) (discussing an improvement project relating to "97 acres of lakefront land *owned by the Park District*, surrounding Soldier Field, generally known as Burnham Park") (emphasis added). Thus, the Park District, as title holder to the Project Area, had authority to enter into the Ground Lease, so long as the Ground Lease complies with state law, which it does.

Specifically, as explained above, the General Assembly amended the Museum Act to authorize the Park District to lease "formerly submerged land" for the development of museums for renewable 99-year terms, provided certain requirements set forth in the amended statute are met. *See* 70 ILCS 1290/0.01. Consistent with all requirements of the Museum Act, the Park District leased the Museum Site to LMNA for a renewable 99-year term for the operation of a public museum. Under the Ground Lease, the Museum must comply with all free admission requirements in the Museum Act; the surrounding 200,000 square feet of newly-created park land will be open to the public; and the Park District retains a reversionary interest in the Museum and Museum Site. Because the Ground Lease is entirely consistent with the grant of authority set out in the Museum Act, the Park District has not acted *ultra vires*, and Count II fails as a matter of law.

**IV.    The Museum Does Not Contravene the Public Trust Doctrine (Count III).**

Plaintiffs also fail to state a claim that the Ground Lease violates the public trust doctrine. The public trust doctrine dates back to *Illinois Central Railroad Co. v. Illinois*, 146 U.S. 387 (1892), in which the Supreme Court invalidated the General Assembly's sale of 1,000 acres of submerged land in Lake Michigan to a private railroad to operate a rail line because that land was held in trust for the public, and the public trust "can only be discharged by the management and control of the property in which the public has an interest [and] cannot be relinquished by a transfer of the property." *Id*. at 453. Applying this rule, the Illinois Supreme Court held that the complete conveyance and relinquishment of title of public trust lands to private entities are

permissible if there is a "direct public benefit." *People ex rel. Moloney v. Kirk*, 45 N.E. 830, 833 (Ill. 1896) (affirming the legislature's sale of reclaimed land along Lake Michigan to defray the cost of extending Lake Shore Drive). By contrast, the Court has invalidated relinquishment of title to public trust lands when the "primary purpose [of the grant was] to benefit a private interest." *People ex rel. Scott v. Chicago Park Dist.*, 360 N.E.2d 773, 781 (Ill. 1976) (invalidating sale of submerged land for expansion of private steel company's facility). In short, the public trust doctrine is implicated only when public trust property is completely conveyed (title is entirely relinquished) to a private entity, and even then, only when the project at issue has no overriding public benefit.

Here, the public trust doctrine is not implicated, much less violated, because the Park District has conveyed only "leasehold rights"—not ownership rights—to LMNA. *See* Compl. Ex. A, ¶ 2.1. Moreover, not only will the Park District continue to own the property, it will maintain substantial control over LMNA's operations. *Id.* ¶¶ 2.8, 3.5. In particular, under the Ground Lease, the Museum Site may be used only for the operation of a public museum, and any proposed change to the Museum's Mission "requires the prior written approval of the Park District." *Id.* ¶ 2.3. The Park District also must approve the design specifications for the Museum and give its written consent for any "material changes." *Id.* ¶¶ 5.2(c), 6.4. The Park District has control "as landlord, to take reasonable steps to monitor" LMNA's operations and to ensure they are "consistent with museums located on the Museum Campus." *Id.* ¶ 2.8. Any failure by LMNA to operate a public museum will trigger reversion of the building and Museum Site to the Park District. *Id.* ¶ 3.3. Finally, LMNA's right of quiet enjoyment under the Ground Lease is "subject to the Park District's police and regulatory powers." *Id.* ¶ 2.5. Because the Park District retains title to and control over the Museum Site, it has not placed public lands "entirely under the use and control of private parties," *Illinois Cent. R.R.*, 146 U.S. at 453;

accordingly, there is no violation of the public trust doctrine.

In that regard, this case is akin to *Friends of the Parks*, 786 N.E.2d 161, in which the Illinois Supreme Court rejected a challenge under the public trust doctrine to improvements to the same park land at issue here. There, the court upheld a statute authorizing public funds to be spent improving Soldier Field, which is owned by the Park District but used by the Chicago Bears. The Friends of the Parks claimed that the statute violated the public trust doctrine because it allowed "a private party (the Bears) to use and control Soldier Field for its primary benefit with no corresponding public benefit." *Id.* at 169. The Court rejected this argument as a matter of law because:

> [n]either the Act, the implementing agreements, nor the project documents provide for a conveyance of the Soldier Field property to the Bears. There is no abdication of control of the property to the Bears. The Park District will continue in its previous capacity as landlord under a lease agreement with the Bears and will continue in its existing role as owner of the remainder of the Burnham Park property.

*Id*. at 170. The same is true here. The Illinois Supreme Court's decision in *Friends of the Parks* thus forecloses Plaintiffs' public trust doctrine challenge to the Museum in this case.

And even if it did not, the Museum complies with the public trust doctrine for a second reason: it will provide a substantial benefit to the public. As explained, the Museum will be open to the public and, as the Museum Act requires, it will provide free entry 52 days each year to Illinois residents and free entry every day to any Illinois schoolchildren accompanied by a teacher. *See* 70 ILCS 1290/1. The Museum will conduct public outreach and education about its collection, *see* Compl. Ex. A, Art. 1 (definition of "Mission"), which, as the General Assembly has recognized, is a meaningful public benefit. *See* 70 ILCS 1290/1 (museums "serve valuable public purposes, including, but not limited to, furthering human knowledge and understanding, educating and inspiring the public, and expanding recreational and cultural resources and

13

opportunities"). The Museum will provide an education center, a library, and an observation deck, all of which will be open to the public without any admission fee. Compl. Ex. A, ¶ 2.3. And the Museum will provide nearly 5 acres (over 200,000 square feet) of new park land for public use and enjoyment, replacing an existing parking lot. *Id.* Recital J. These are among the myriad ways in which the Museum satisfies the public trust doctrine's requirement that it have a "direct public benefit."

Plaintiffs do not dispute either that the Ground Lease does not involve the conveyance of title or that the Museum will have meaningful public benefits. Instead, Plaintiffs seek to divert attention from the questions at issue by suggesting that the public trust doctrine imposed a "fiduciary duty" on the Park District to select an alternative site for the Museum. Compl. ¶¶ 5, 40-46. Plaintiffs are incorrect. The public trust doctrine does not impose fiduciary obligations, much less put courts in the business of second-guessing the decisions of elected officials, once it is established that the conveyance of public property to a private entity has a corresponding public benefit. *See, e.g.*, *Paepcke*, 263 N.E.2d at 21 ("[T]he courts must deal with legislation as enacted and not with speculative considerations of legislative wisdom."). Whether another site would have been preferable is a question that belongs to the Park District's Board, the Plan Commission, and the City Council, all of whom voted to approve the Museum at its present site.

Plaintiffs' contention that public trust lands must be maintained as "open space" or in a "pristine" state likewise lacks merit. *See* Compl. ¶¶ 37, 39, 47, 77-78. No case holds that the public trust doctrine is violated because the use of land for a public benefit decreases open space. To the contrary, in the very case Plaintiffs cited for this supposed requirement, *Paepcke*, the Illinois Supreme Court held that constructing a building in a public park (which, by necessity, decreased open space) did not violate the public trust doctrine. 263 N.E.2d at 19. Moreover, the public benefit of locating cultural institutions in Chicago's lakefront parks was recognized as far

14

back as 1909 in Burnham and Bennett's *Plan of Chicago*, which envisioned the construction of a cultural complex, including the Field Museum and other institutions, in park land adjacent to the lakefront.  *See* D. Burnham and E. Bennett, *Plan of Chicago* 109-10 (1909), available at https://ia802304.us.archive.org/22/items/planofchicago00burnuoft/planofchicago00burnuoft.pdf.

## CONCLUSION

Plaintiffs' challenges to the Ground Lease present purely legal issues this Court can and should resolve on a motion to dismiss.  The General Assembly has authorized Defendants to enter into a ground lease to place a museum on the lakefront.  The Ground Lease with LMNA complies fully with that statutory grant, and it in no way violates the public trust doctrine.  Like the Field, the Shedd, and the Adler, construction of the Museum on the lakefront property will substantially benefit the public.  Plaintiffs have had more than an adequate opportunity to state a claim.  Therefore, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: November 3, 2015                    Respectfully submitted,

                                          DEFENDANTS CITY OF CHICAGO & CHICAGO PARK DISTRICT

                                          By:    /s/ William Macy Aguiar
                                                 One of Their Attorneys

Brian D. Sieve, P.C.          William Macy Aguiar                 Joseph P. Roddy
Kirkland & Ellis LLP          Ellen W. McLaughlin                 Burke, Warren, MacKay &
300 N. LaSalle Street         City of Chicago, Department of Law  Serritella, P.C.
Chicago, IL 60654             30 North LaSalle Street, Suite 1230 330 N. Wabash Ave.
(312) 862-2197                Chicago, IL 60602                   Suite 2100
                              (312) 744-7686 / 742-5147           Chicago, IL 60611
                                                                  (312) 840-7000

Attorneys for Defendant City of Chicago                           Attorneys for Defendant
                                                                  Chicago Park District

15