UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRIENDS OF THE PARKS, <br> SYLVIA MANN, and JOHN BUENZ, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO PARK DISTRICT and <br> CITY OF CHICAGO, <br><br> Defendants. | Case No. 14-cv-9096 <br><br> Judge John W. Darrah |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this action, seeking to enjoin Defendants from proceeding with the construction of a museum on land that is adjacent to Lake Michigan. Defendants filed a Motion to Dismiss the Complaint, which was denied in part and granted in part on March 12, 2015. After that ruling, the Park District and the Lucas Museum of Narrative Art entered into a new agreement, following legislation enacted by the Illinois General Assembly. Plaintiffs then filed a First Amended Complaint ("FAC"). Defendants have moved to dismiss the FAC.

### **BACKGROUND**

The following is taken from the FAC, which is assumed to be true for purposes of deciding a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiff Friends of the Parks is a nonprofit park advocacy organization, dedicated to preserving, protecting, and improving Chicago's parks and forest preserves. Plaintiffs Sylvia Mann and John Buenz are residents of Illinois. Defendant Chicago Park District ("Park District") is "a body politic and corporate" established by state law. 70 Ill. Comp. Stat. § 1505/3. Defendant City of Chicago is a body politic and municipal corporation. (FAC ¶¶ 6-10.)

In May 2014, a task force appointed by Chicago Mayor Rahm Emanuel issued a report recommending the parking lots south of Soldier Field as the site for constructing a museum. The Museum is to be operated by a nonprofit corporation with the name, the Lucas Museum of Narrative Art (the "LMNA"); it will be dedicated to the exhibition of "narrative art" selected by the LMNA. The Mayor publicly endorsed the proposed location. (*Id.* ¶¶ 13-16, 27.)

On or about September 8, 2014, the Park District entered into a memorandum of understanding ("MOU") with the LMNA, memorializing the terms discussed between the Park District and the LMNA, including the construction, use and operation of the Museum. (*Id.* Ex. A at 2, ¶ G.) On November 13, 2014, Plaintiffs initiated this action.

After the Court's ruling on Defendants' motion to dismiss on March 12, 2015, the Illinois General Assembly, on April 23, 2015, amended the Park District Aquarium and Museum Act, 70 Ill. Comp. Stat. 1290/1 ("Museum Act"), and the Governor signed the bill into law on May 1, 2015. The amended Museum Act, in part, provides that:

> [t]he corporate authorities of cities and park districts having control or supervision over any public park or parks, including parks located on formerly submerged land, are hereby authorized to . . . permit the directors or trustees of any corporation or society organized for the construction or maintenance and operation of an aquarium or museum as hereinabove described to erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain, and operate its aquarium or museum within any public park now or hereafter under the control or supervision of any city or park district . . . .

70 Ill. Comp. Stat. 1290/1. After the legislation was enacted, the Park District and LMNA entered into a Ground Lease on October 14, 2015. (FAC Exh. A.) The Ground Lease permits LMNA to construct the Museum on, and to beautify and improve, the land lying south of Solider Field and north of the McCormick Place Lakeside Center (the "Project Area"). (FAC Ex. A, Recital D.)

The Ground Lease provides a term of 99 years with the option for renewal for two additional periods of 99 years. (FAC ¶¶ 25-26.) Under the terms of the lease, the LMNA assumes full and sole responsibility for the proposed building and has exclusive control over the construction, maintenance and operation, repair and management of the building. (*Id.* ¶ 29.) The interest in the property is to be conveyed for a price of ten dollars. (*Id.* ¶ 28.)

On October 14, 2015, the Chicago Plan Commission voted to approve the Museum and to recommend to the City Council that it amend the zoning for the Project Area. On October 20, 2015, the City Council's Committee on Zoning, Landmarks and Building Standards held a public hearing on the requested zoning amendment and voted to recommend its passage to the City Council. The City Council approved the amendment on October 28, 2015. The subject property of the Ground Lease is located within Burnham Park and consists entirely of land recovered from the navigable waters of Lake Michigan, most during the 1920s. (*Id.* ¶ 20.)

On October 2, 2015, Plaintiffs filed the FAC. Plaintiffs seek to bar the transfer of control of land pursuant to the Ground Lease because, "the proposed ground lease . . . unlawfully conveys to a private party a right of continuing and exclusive control" over property recovered from the waters of Lake Michigan, which is held in trust by the State of Illinois for the people. (*Id.* ¶ 1.) Plaintiffs claim that the Ground Lease is a transfer to a private party, which violates the public trust. (*Id.*)

Plaintiffs assert a federal claim under § 1983 for violation of due process and an unlawful taking in violation of the Fifth Amendment (Count I) and state-law claims that Defendants acted *ultra vires* and in violation of the public trust (Counts II and III,

respectively). Defendants have moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.[1]

## LEGAL STANDARD

*12(b)(6) Motion*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). To survive a 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

For purposes of a motion under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Tamayo*, 526 F.3d at 1081.[2]

---

[1] Defendants again raise some issues previously resolved in the Opinion of March 12, 2015. Some of those issues will be addressed; but the prior Opinion, where applicable, is incorporated herein. Also, the three claims pled in the FAC present some overlapping and interrelated issues. However, each count will be discussed separately.

[2] Defendants have raised several factual issues, *e.g.* the argument that the museum will substantially benefit the public, (Dkt. 66, pp. 13, 15; Dkt. 72, pp. 11, 12.), that are not properly considered in resolving a 12(b)(6) motion to dismiss.

**ANALYSIS**

*Count I - Due-Process Claim*

As in the original Complaint, Count I of the FAC alleges a Fourteenth Amendment due-process claim.

> "Due process is a flexible concept which 'calls for such procedural protections as the particular situation demands.'" *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir.1993) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In order to state a Fourteenth Amendment procedural due process claim, Plaintiffs must allege that "(1) [they] had a constitutionally protected property interest, (2) [they] suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943-44 (7th Cir.2010). The Constitution does not create property interests; rather, protected property interests must derive from an independent source such as state law. *Buttitta*, 9 F.3d at 1201 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), and *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972)).

*Friends of the Parks v. Chicago Park Dist.*, No. 14-CV-09096, 2015 WL 1188615, at *9 (N.D. Ill. Mar. 12, 2015).

Plaintiffs allege that Defendants deprived them of property in violation of due process by executing the Ground Lease without specific approval from the General Assembly.

Defendants argue, first, that Plaintiffs do not have the private property interest in the Project Area required to state a due-process claim. As more fully discussed in the Memorandum Opinion and Order entered in this case on March 12, 2015, the Illinois Supreme Court held that each taxpayer of Illinois has a fractional beneficial interest in the property that the state of Illinois holds in trust for them, so as to create a protectable property interest. *Paepcke v. Public Bldg. Comm'm of Chicago*, 263 N.E.2d 11, 18 (Ill. 1970). Defendants argue that "an alleged misuse of private public property gives rise, at most, to a state-law public trust claim, not a due process claim," citing to *Paepcke* and *Reichlederfer v. Quinn*, 287 U.S. 315, 318-319

5

(1932), in support. (Dkt. 66 at 6.) However, *Paepcke*, citing to *Reichlederfer*, determined that there was no constitutionally protected property interest derived from proximity to public parks that had been designated for a particular purpose by the legislature. Rather, *Paepcke* held that the rights asserted by Plaintiffs are derived from the public-trust doctrine. When considering whether there is a public property right to enforce the public trust, the court in *Paepcke* held:

> "[i]f the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time."

*Paepcke*, 263 N.E.2d at 18.

Defendants further argue that even if Plaintiffs have a constitutionally-protected property interest in the Project Area, the amendment of the Museum Act provided the necessary approval from the General Assembly and that the legislative procedure resulting in that amendment provided Plaintiffs with sufficient process for the deprivation of that interest. Plaintiffs, however, plead that the General Assembly, in enacting the legislation purportedly transferring control of the property, did not "refer specifically to the alienation, forfeiture or disposition of the land that is subject of the ground lease." (FAC ¶ 53.) Plaintiffs have alleged that, by failing to provide specific approval for the transfer of the subject land, the General Assembly has acted in violation of Plaintiffs' right to due process. Construing the allegations in Plaintiffs' favor, Plaintiffs have sufficiently stated a procedural due-process claim under the Fourteenth Amendment. Thus, Defendants' Motion to Dismiss is denied with respect to Count I.

*Count II - Ultra Vires Claim*

In Count II of the Complaint, Plaintiffs allege that the Park District is acting *ultra vires* by entering into a lease with the LMNA without a specific authorization from the General

6

Assembly. Defendants contend that "in amending the Museum Act, elected representatives of the State discharged their legislative responsibilities in the manner prescribed by law." (Dkt. 66, p. 8.)

However, "[i]t is an established rule that the General Assembly cannot delegate its general legislative power to determine what the law shall be." *Hill v. Relyea*, 216 N.E.2d 795, 797 (Ill. 1966). "[I]t may delegate to others the authority to do those things which the legislature might properly do, but cannot do as understandingly or advantageously." *Id.* "The former involves a discretion as to what the law shall be; the latter is merely an authority or discretion as to its execution, to be exercised under and in pursuance of the law." *Id.*

The amended Museum Act provides that:

> a city or park district may enter into a lease for an initial term not to exceed 99 years, subject to renewal, allowing a corporation or society as hereinabove described to erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain, and operate its aquarium or museum, together with grounds immediately adjacent to such aquarium or museum, and to use, possess, and occupy grounds surrounding such aquarium or museum as hereinabove described for the purpose of beautifying and maintaining such grounds in a manner consistent with the aquarium or museum's purpose, and on the conditions that (1) the public is allowed access to such grounds in a manner consistent with its access to other public parks, and (2) the city or park district retains a reversionary interest in any improvements made by the corporation or society on the grounds, including the aquarium or museum itself, that matures upon the expiration or lawful termination of the lease.

70 Ill. Comp. Stat. § 1290/1. Defendants argue that although the amendment did not grant authority to transfer control of the subject property to a private entity for a specific purpose benefitting the public, the above-cited language of the amendment alone is sufficient. However, formerly submerged land is held in "a title different in character from that which the state holds in lands intended for sale. It is different from the title which the United States hold in the public lands which are open to pre-emption and sale." *Illinois Cent. R. Co. v. State of Illinois*, 146 U.S.

7

387, 452 (1892). As discussed in the previous opinion of March 12, 2015, whether the use of previously submerged Illinois land protected by the public-trust doctrine is permissible has been determined by the courts in light of the authorizing legislation by the Illinois General Assembly. *Illinois Central Railroad*, the seminal opinion on this issue, held that land in the public trust is "held by the whole people for purposes in which the whole people are interested." *Illinois Cent. R. Co.*, 146 U.S. at 456 (emphasis added). "A disposition of these submerged lands, by the State, is a question of the power of the State, acting as a governmental body." *Bowes v. City of Chicago*, 120 N.E.2d 15, 22-23 (Ill. 1954). Plaintiffs adequately plead that the amendment enacted by the General Assembly was not sufficient to transfer control of public-trust land to a private entity.

Defendants also argue that any specific grant of authority would violate the special legislation clause of the Illinois Constitution. The special legislation clause provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable." ILL. CONST. 1970, art. IV, § 13.

> This constitutional provision does not prohibit all classifications; rather, its purpose is to prevent arbitrary legislative classifications. . . . If any set of facts can be reasonably conceived that justifies distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may enact laws applicable only to those persons or objects.

*Petition of Vill. of Vernon Hills*, 658 N.E.2d 365, 367 (Ill. 1995). "[T]he purpose of the special legislation clause is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis." *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1069-70 (Ill. 1997).

This concern has previously been addressed by the courts in the context of the public trust doctrine. As originally written, the Museums in Parks Act, "which limited the privilege to museums located in a public park on the first day of July, 1903, was intended to apply, and as a matter of fact did apply, only to [the Field Museum]." *S. Park Comm'rs v. Montgomery Ward & Co.*, 93 N.E. 910, 912 (Ill. 1910). However, the legislature amended the statute to prevent a suit accusing the State of giving a special privilege to the Field Museum. *See* Journal of the Senate of the 47th General Assembly of the State of Illinois, p. 941-42; *S. Park Comm'rs*, 93 N.E. at 912.

In *People ex rel. Attorney Gen. v. Kirk*, 45 N.E. 830 (Ill. 1896), a case in which a grant to a private entity was upheld, the Illinois Supreme Court considered whether the transfer of public trust land to private parties was valid "under an act of the legislature of the state of Illinois passed in the year 1889, and for the purpose of having removed the filling, breakwaters, and extension of the drive already made under said contracts." *Kirk*, 45 N.E. at 830. In *People ex rel. Scott v. Chicago Park Dist.*, 360 N.E.2d 773 (Ill. 1976), the Illinois Supreme Court analyzed whether a bill conveying submerged land to the United Steel Corporation violated the public trust doctrine. *Scott*, 360 N.E.2d at 777-781. In *Lake Michigan Fed'n v. U.S. Army Corps of Engineers*, 742 F. Supp. 441, 445 (N.D. Ill. 1990), the court examined a grant by the General Assembly of the lakebed to Loyola University of Chicago. *Lake Michigan Fed'n*, 742 F. Supp. at 445. None of these cases raise the special legislation clause as a potential bar to public trust transfers.

Plaintiffs have plausibly stated a claim that conveyance of park lands by the Park District is *ultra vires* for the purposes of a motion to dismiss under 12(b)(6). Thus, Defendants' Motion to Dismiss is denied with respect to Count II.

*Count III - Public Trust Claim*

In Count III of the FAC, Plaintiffs claim that Defendants are in breach of their duty to hold the property in trust for the people of Illinois.

The State of Illinois "holds title to submerged land, as is involved here, in trust for the people, and . . . in general the governmental powers over these lands will not be relinquished." *Scott*, 360 N.E.2d at 779. Under the public-trust doctrine, the State cannot "abdicate its trust over property in which the whole people are interested . . . so as to leave them entirely under the use and control of private parties." *Illinois Central R. Co.*, 146 U.S. at 453. State control over public lands cannot be relinquished "except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining." *Id.* The purpose "of the public trust doctrine is to police the legislature's disposition of public lands." *Lake Michigan Fed'n*, 742 F. Supp. at 446. "If courts were to rubber stamp legislative decisions, . . . , the doctrine would have no teeth. The legislature would have unfettered discretion to breach the public trust as long as it was able to articulate some gain to the public." *Id.* Plaintiffs claim that that the General Assembly has abdicated its trust responsibilities over the subject property by delegating their responsibility as trustees to the Park District. Plaintiffs further assert that only the General Assembly, as representative of all of the people of Illinois, has the authority to determine whether the use of the subject land is for the public benefit and that this determination cannot be delegated to a lesser representative body.

The General Assembly may convey public-trust land as long as the transfer is consistent with the public interest and does not impair the remaining lands and waters. *Droste v. Kerner*, 217 N.E.2d 73, 76 (Ill. 1966) ("The proper execution of this public trust with respect to

submerged lands requires that the conveyance of any particular parcel to a shore owner be consistent with the public interest and not impair the interest of the public in the lands and waters remaining."). Courts have struck down legislative grants of public-trust land where the primary purpose is to benefit a private party. *Lake Michigan Fed'n*, 742 F. Supp. at 445.

> Three basic principles can be distilled from this body of public trust case law. First, courts should be critical of attempts by the state to surrender valuable public resources to a private entity. . . . Second, the public trust is violated when the primary purpose of a legislative grant is to benefit a private interest. . . . Finally, any attempt by the state to relinquish its power over a public resource should be invalidated under the doctrine.

*Id.* at 445 (internal citations omitted).

Defendants argue that the Park District may lease land to the LMNA without violating the public-trust doctrine. Defendants first argue that the public-trust doctrine is not implicated because the Park District has conveyed leasehold rights, and not ownership rights, to the LMNA. The Ground Lease provides for a 99-year lease with two renewal options, also for 99 years. (Ground Lease, ¶ 3.1.) Subject to the Park District's police and regulatory powers, the LMNA "shall be entitled to . . . quiet possession and enjoyment of the Museum Site." (*Id.* ¶ 2.5.) At the expiration or termination of the lease, the LMNA will return the Museum Site to the Park District. (*Id.* ¶ 3.3.) The Ground Lease further provides that "this Lease conveys to Lucas Museum of Narrative Art a leasehold estate in the Museum Site, and it is intended by the Park District and Lucas Museum of Narrative Art that the Park District shall be forever the holder of fee simple title to the Museum Site." (*Id.* ¶ 3.5.)

Defendants next argue that this situation is similar to the Illinois Supreme Court's decision in *Friends of Parks v. Chicago Park Dist.* However, in discussing the agreement between the Chicago Bears and the Park District, the court noted:

> The Park District is, and will remain, the owner of the Burnham Park property, including Soldier Field. Neither the Act, the implementing agreements, nor the project documents provide for a *conveyance* of the Soldier Field property to the Bears. There is no abdication of *control* of the property to the Bears.

*Friends of Parks v. Chicago Park Dist.*, 786 N.E.2d 161, 170 (Ill. 2003) (emphasis added). The Bears entered into a Permit and Operating Agreement with the Park District, allowing for the Bears to use Soldier Field for specific purposes; but Soldier Field itself was still owned and controlled by the Park District. In contrast, pursuant to the Ground Lease under consideration here, Museum is defined as "the museum building and related improvements, fixtures and facilities to be constructed or installed on the Museum Site by Lucas Museum of Narrative Art, pursuant to the terms and provisions of this Lease . . ., and which, during and upon completion *shall be owned by Lucas Museum of Narrative Art* for the Term of the Lease." (FAC Exh. A., p. 8) (emphasis added). *Friends of Parks* is not controlling in this instance.

Plaintiffs claim that a 99-year lease term is a "legal subterfuge" (Dkt. 77, p. 10) and, in effect, a surrender of ownership. In *Dep't of Pub. Works & Buildings v. Metro. Life Ins. Co.*, 192 N.E.2d 607 (Ill. App. Ct. 1963), an Illinois Appellate Court stated: "It is well established that lessees for years holding under a valid lease have such an interest in real property as to be classified as owners in the constitutional sense and are entitled to compensation for the taking of their interest in the property." *Dep't of Pub. Works & Buildings v. Metro. Life Ins. Co.*, 192 N.E.2d at 610. In *Pierce v. Pierce*, 23 N.E.2d 511 (Ill. 1954), the Illinois Supreme Court held that a 99-year lease may be the subject of a partition. *Pierce*, 123 N.E.2d at 511. These cases stand for the proposition that a long-term lease may convey an interest in real property.

Defendants argue that the public-trust doctrine is only implicated when public-trust property is "*completely conveyed* (title is entirely relinquished) to a private entity." (Dkt. 66,

p. 12) (emphasis added).³ But in *Illinois Central Railroad*, the Supreme Court spoke in broader terms of *control*:

> Such abdication is not consistent with the exercise of that trust which requires the government of the state to preserve such waters for the use of the public. The trust devolving upon the state for the public, and which can only be discharged by the management and *control* of property in which the public has an interest, cannot be relinquished by a transfer of the property. The *control* of the state for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.

*Illinois Cent. R. Co.*, 146 U.S. at 453 (emphasis added). Plaintiffs sufficiently plead that the Ground Lease effectively surrenders control of the Museum Site (FAC, ¶ 1) and places the public-trust land "entirely beyond the direction and control of the state." *Id.* at 454.

Defendants also argue that the LMNA will primarily benefit the public and not a private interest. Plaintiffs have sufficiently pled that the proposed Museum is not for the benefit of the public but will impair public interest in the land and benefit the LMNA and promote private and/or commercial interests.⁴ Moreover, as mentioned above, Defendants raise a question of fact in this regard not now properly considered. Plaintiffs have plausibly stated a claim for a violation of the public-trust doctrine. Thus, Defendants' Motion to Dismiss is denied with respect to Count III.

---

³ Conveyance includes a leasehold interest. A conveyance is "the voluntary transfer of a right or of property." Black's Law Dictionary (10th ed. 2014). A lease is "1. A contract by which a rightful possessor of real property *conveys* the right to use and occupy the property in exchange for consideration, usu. rent. . . ." *Id.* (emphasis added).

⁴ There is a balance between preservation of public-trust lands and encroaching upon those lands for the public good. *See Paepcke*, 263 N.E.2d at 21. However, courts must be skeptical with claims of public benefit; otherwise, "[t]he legislature would have unfettered discretion to breach the public trust as long as it was able to articulate some gain to the public." *Lake Michigan Fed'n*, 742 F. Supp. at 446. "Nor should the federal court carve out an exception to the law because the affected private party is a respectable non-profit entity." *Id.* at 449.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [65] is denied.

Date: _____February 4, 2016_____      _____
                                                                        JOHN W. DARRAH
                                                                       United States District Court Judge